## Plotts' Estate

*Russell Miller* and *William A. Gray*, for proponents.

*Harry E. Sprogell, Saul, Ewing, Remick & Saul, Benjamin B. Hoar,* and *Henry Panfil,* for contestants.

STEARNE, J., April 29, 1938.—This is a motion for a new trial, and for judgment non obstante veredicto, upon a verdict rendered by a jury against a will in an issue devisavit vel non. The case was tried by an orphans' court judge under the Act of June 7, 1917, P. L. 363, as amended by the Act of July 1, 1937, P. L. 2665.

The issues directed to be submitted to the jury were (1) as to the date of execution of the will, and (2) mental capacity of decedent. The jury found that the will was not signed upon its purported date or subsequent to the date of a prior will, and that decedent did not possess testamentary capacity.

The principal reason assigned for a new trial relates to a question of procedure. Proponent maintains that the trial judge erred in requiring the proponent to prove the execution and validity of the will de novo. He contends that since Keen's Estate, 299 Pa. 430, in a jury trial of an awarded issue the proponent is merely required to offer the record of probate of the register of wills in evidence and rest, thereby shifting the burden upon contestants to overthrow the will and its probate. He urges that the ruling to the contrary by the trial judge was so prejudicial to his case that it necessitates a retrial.

The excerpt from the opinion in Keen's Estate, supra, which gives rise to this question is found at page 440:

"The record suggests a question of practice on appeal from the register's order probating a will. In such case,

it is sufficient for the proponents in the first instance to offer the register's record of probate, including the will; thereupon, the burden of proof shifts to the contestants. See 1 Rhone Orphans' Court Practice (3d ed.), page 737; 28 R. C. L. 145. 'Until a prima facie case against the will has been made out by the contestant, they [the proponents] may rest upon the proof before the register, whose decree admitting the will to probate stands until duly reversed': Whitaker's Est., 10 W. N. C. 139, opinion by Judge Penrose."

It is one view that the Supreme Court referred solely to the practice in the orphans' court, on an appeal from the register. The other contention is that the practice is similarly indicated in the trial of the issue before the jury.

We could well dismiss the motion for a new trial, without further consideration, inasmuch as proponent did not choose to rest his case upon the offer of the record in evidence and the adverse ruling of the trial judge. He elected to prove the will by the subscribing witnesses, and was permitted to exercise the widest latitude in their cross-examination. As was said in Keen's Estate (p. 440) :

"This question [of practice] is not of vital importance here as the proponents offered proof in the orphans' court of the execution of the will."

Since, however, this question of practice will constantly recur in the orphans' court in jury trials of issues devisavit vel non under the Act of 1937, supra, we have carefully examined all reported cases in an effort to determine the correct procedure.

We have reached the conclusion that hereafter it will be advisable to apply what has been written by the Supreme Court in Keen's Estate, supra, to trials of awarded issues devisavit vel non, as well as to appeals from probate to the orphans' court.

Prior to Keen's Estate, supra, there was logic and authority for supposing that once an issue was granted its

effect was to open the probate. Thereafter proponent was required to prove the execution of the will, and its validity, de novo. Certainly for many years this was the prevailing practice in this court, and in the common pleas trials. It prevailed both at the preliminary hearing in the orphans' court concerning the grant of an issue and at the jury trial in the common pleas where such issue had been granted. By analogy to the procedure in the common pleas relating to the opening of a judgment, plaintiff may not establish a prima facie case by offering the record of the judgment in evidence. He must proceed de novo: Sossong v. Rosar, 112 Pa. 197; Harris v. Harris, 154 Pa. 501. It is a general principle of law that the proponent at all times carries the burden of proof: 68 C. J. 979, sec. 747. This principle is founded upon the rule of evidence that he who affirms must prove: Chapman on Evidence, 309. In an issue before a jury proponent is still styled plaintiff, and contestants are still named defendants. A feigned issue was formerly required where an issue was tried before a jury. This was the familiar fiction of a supposed contract or wager. As in all actions based upon contracts the burden of proof rested upon plaintiff. The Orphans' Court Act of 1917, supra, sec. 21(*b*), simplified the above procedure and prescribed the form of the proceeding. The act still placed the affirmative proof upon proponent. With this background it was most persuasive that once an issue was granted, proponent, upon the jury trial, was required to proceed de novo.

We have carefully examined the language of the Supreme Court in Keen's Estate, supra. True, the court says "it is sufficient for the proponents in the *first instance*" (italics supplied) to offer the probate record. Without a careful study of the authorities cited in the opinion, it might at first appear that the practice directed to be followed applies solely to the initial hearing in the orphans' court upon appeal from the register. An analy-

sis of the authorities cited by the Supreme Court in support of its decision leads us to the conclusion that it was intended to apply both to the preliminary hearing and to the subsequent trial of the issue before the jury.

1 Rhone, Orphans' Court Practice in Pa. (2d ed.), 734, paragraph 272 reads:

"The party in favor of sustaining the will may stand upon a decree of probate as sufficient record evidence in his favor to sustain the will."

The cases cited to sustain the text are Sholly v. Diller, 2 Rawle 177, Cowden et al. v. Reynolds, 12 S. & R. 281, Davies v. Morris, 17 Pa. 205, Shinn v. Holmes, 25 Pa. 142, and Barker v. McFerran, 26 Pa. 211. The first three of these ancient cases relate to jury trials upon case stated to test the validity of wills. The last two relate to ejectment proceedings where the record of the probate being offered in evidence was not permitted to be attacked collaterally. Section 98 of 28 R. C. L. 144, 145, discloses that in some jurisdictions the proponent's burden of proof as to the validity of the will, and its lawful execution, is primarily met by proof of probate, while in others such burden is held to be upon proponent "throughout the trial of an issue devisavit vel non." The text then states:

*"It seems, however, that the burden in both cases is satisfied by the introduction of the will and the record of the probated will, and the contestants must then offer proof to overcome the prima facie case thus made in both respects."* (Italics supplied.)

Judge Penrose, in Whitaker's Estate, 10 W. N. C. 139, wrote that until the prima facie case against the will had been made out by the contestant the proponent "may rest upon the proof before the register, whose decree admitting the will to probate *stands until duly reversed.*" (Italics supplied.)

The probate of a will is not opened or reversed by the award of an issue. Section 21(*b*) of the Register of Wills Act of June 7, 1917, P. L. 415, provides: "No ap-

peal from any decree of the register concerning the validity of a will, or the right to administer, shall suspend the powers or prejudice the acts of any executor or administrator to whom letters have been granted." See Pusey's Estate, 321 Pa. 248, 269.

This section of the Register of Wills Act must be read in conjunction with section 20 (e) 1 of the Orphans' Court Act of 1917, supra.

Proponent maintains that, because he was required to place the obviously adverse subscribing witnesses upon the stand to prove the will, his case was thereby prejudiced. He attempted, in the first instance, to prove decedent's signature to the will by opinion testimony as to the genuineness of the signature. The trial judge very properly declined to permit such proof because of the presence in court of the subscribing witnesses. It is well settled that unless the subscribing witnesses are deceased, or their absence from the jurisdiction satisfactorily established, such testimony is not competent: Derr v. Greenawalt, 76 Pa. 239; Cowden et al. v. Reynolds, supra; Givin v. Green, 10 Phila. 99. Proponent's contention that he was prejudiced because he was obliged to call adverse subscribing witnesses to prove the will is without merit. The trial judge did not treat such witnesses as proponent's witnesses. On the contrary, he permitted proponent freely to cross-examine them as if under cross-examination. Here again the trial judge was clearly correct. A subscribing witness possesses a different status than ordinary witnesses. In the ordinary case a party litigant may not, except for cause, impeach the testimony of his own witness. In a will contest, however, it is immaterial who calls a subscribing or attesting witness. Judge Penrose in Whitaker's Estate, supra, points out that such witnesses are regarded rather as witnesses of the court than of the party, and may be freely examined and cross-examined by both sides. Judge Penrose's opinion is buttressed by two early English

cases with authoritative pronouncements to this effect by Lords Eldon and Mansfield.

It is incidentally noted that a third subscribing witness was not called by either side because she was regarded as incompetent. The witness was the wife of proponent, and possessed an adverse interest to him. As we are not called upon to pass on this question we do not express our opinion thereon.

Until Keen's Estate, supra, there was undoubtedly confusion on the question. Where a will is collaterally attacked the record of the probate is conclusive: Shinn v. Holmes, supra; Barker v. McFerran, supra; Folmar's Appeal, 68 Pa. 482; Amberson's Estate, 204 Pa. 397; Bunce v. Galbrath, 268 Pa. 389. On the contrary, before the register, where the register awards an issue, there is no decree of probate, and the will must be proved by subscribing or attesting witnesses: Rees, Admr., v. Stillé, 38 Pa. 138; Ruddach v. Reichenbach, 17 W. N. C. 549. In appeals from probate to the orphans' court, prior to Keen's Estate, proof of the will was required de novo: Simcox's Estate, 1 Dist. R. 653. After Keen's Estate there appears to be not the slightest doubt that proponent establishes a prima facie case by offering the probate record. In cases of trial of an issue before a jury there was considerable contradiction in the authorities as to practice. Thus, in Sholly v. Diller, supra, and in Davies v. Morris, supra, the record of probate was apparently held sufficient to establish a prima facie case. Upon the contrary, Derr v. Greenawalt, supra, Cowden et al. v. Reynolds, supra, and even Judge Penrose in Whitaker's Estate, supra (cited in Keen's Estate), apparently decided that the proponent, upon the trial of an issue, must proceed de novo. As early as 1828 Chief Justice Gibson in Sholly v. Diller, supra, wrote, respecting the mode of presenting testimony by both sides in a will contest: *"I know of no question more unimportant in its consequence than this."* (Italics supplied.) As stated heretofore in

Keen's Estate, supra, the matter of practice "is not of vital importance", where proponent (as here) undertook to prove the will. Even though the ruling of the trial judge be regarded as error, it became harmless error, and constituted no reason for a new trial: Messner et al. v. Elliott, 184 Pa. 41; Powell et al. v. Derickson et al., 178 Pa. 612.

With the law in this rather confused situation, we regard it wise in jury trials of issues devisavit vel non in the orphans' court, under the Act of 1937, to conform to the same practice established by Keen's Estate relating to the hearing of appeals from the register. The probate record, offered in evidence, is prima facie proof of the execution of the will, and of its validity. As the subscribing witnesses are the "court's witnesses", these witnesses may be freely examined and cross-examined by both sides without either proponent or contestant being bound by any adverse testimony of such witnesses, as in the case of other witnesses called as if for cross-examination. While the burden rests upon proponent at all times to sustain the will, yet in the first instance he meets the burden by offering in evidence the record of probate. The burden then shifts to contestants to overthrow this prima facie proof.

Proponent's eleventh reason assigned for a new trial is that the trial judge refused to regard the subscribing witnesses as "accomplices", as if in a criminal prosecution, and to require independent corroboration of their testimony. But this is a civil proceeding, not a criminal one. We are not prepared to hold that these subscribing witnesses were "accomplices" in the meaning and as understood in the criminal law. We have been unable to find any authorities, and none have been cited, which apply such principle in civil cases. But even if such principle did apply, apparently no corroboration is essential. All that is required is instruction to the jury to "closely scrutinize such testimony and accept it with caution":

Commonwealth v. Cohen, 31 D. & C. 249, 253. See also Commonwealth v. Haines, 257 Pa. 289, and Commonwealth v. McCloskey, 273 Pa. 456. And if corroboration were necessary, there was ample corroborative proof in the physical condition of the will, erasures, handwriting expert, testimony of physician as to decedent's condition, as well as other evidence as to the witnesses' whereabouts at the time of the alleged execution. All this was fully covered in an accurate and meticulous charge to the jury, in which we find no error.

There appears to be no necessity to enter into consideration of the motion for judgment non obstante veredicto on the ground that the decedent's mental incapacity was not sufficiently established. The verdict of the jury upon the first issue, which was against the validity of the will, and with which we are in accord (see McNitt v. Gilliland, 246 Pa. 378), effectually operates to set aside the will and renders further consideration unnecessary.

All other reasons assigned for new trial or judgment non obstante veredicto have our careful consideration, but we find no merit in them; nor do they require discussion seriatim.

We accordingly dismiss the motion for a new trial, and the motion for judgment non obstante veredicto is overruled.

Under the practice heretofore prevailing, when an issue devisavit vel non was sent to the common pleas for trial, so long as the verdict of the jury remained undisturbed, it was regarded as conclusively establishing the facts: Cross' Estate, 278 Pa. 170. But the verdict thus rendered was not a general one. It was rather a special one. It remained for the orphans' court, upon the return of the findings, to give due effect to the verdict by an appropriate decree. The practice is not essentially different where the issue is tried in the orphans' court under the Act of July 1, 1937, P. L. 2665. The court in

banc sits in a dual capacity: In one capacity it sits with the trial judge to hear and dispose of the motion for new trial and for judgment non obstante veredicto, and to direct proper judgment to be entered on the verdict; in the other capacity it sits as the orphans' court to apply the law to the facts thus found and to enter an appropriate definitive decree. It was the purpose of the legislature in passing the Act of 1937 to save the time and expense to parties litigant, simplify the procedure, and to require but one appeal instead of two. In conformity with this purpose, having sustained the verdict, we now enter the following

*Decree*

And now, to wit, April 29, 1938, the appeal herein from the decree of the register of wills admitting to probate a certain writing dated June 3, 1935, as the last will and testament of Mary A. Plotts is sustained, and said probate is set aside, the letters testamentary are vacated and the record is remitted to the register.